Filed 12/31/14; pub. order 1/29/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| OGDEN ENTERTAINMENT SERVICES et al., <br><br>     Petitioner, <br><br>     v. <br><br> WORKERS' COMPENSATION APPEALS BOARD and KRISTIAN VON RITZHOFF, <br><br>     Respondents. | B254082 <br><br> (W.C.A.B. Nos. ADJ4599548, ADJ1414058) |

    PROCEEDING to review a decision of the Workers' Compensation Appeals Board. Annulled and remanded.

    Floyd, Skeren & Kelly, Terry L. Smith, Timothy D. Morgan for Petitioner.

    Kristian Von Ritzhoff, in pro. per., for Respondent.

    James T. Losee, Department of Industrial Relations, for Respondent Workers' Compensation Appeals Board.

———————————

The workers' compensation judge (hereafter WCJ) found respondent Kristian von Ritzhoff (hereafter Ritzhoff) totally permanently disabled. The Workers' Compensation Appeals Board (hereafter appeals board) denied the petition for reconsideration and adopted the WCJ's decision as its own. Ritzhoff obtained this lifetime award even though he refused to subject himself to cross-examination.

We annul the appeals board's decision because the due process right of defendant Ogden Entertainment Services (hereafter defendant) to cross-examination was violated. We remand with directions for new proceedings consistent with this opinion.

### The Original Orthopedic Injury

Ritzhoff sustained injuries on March 16, 1996, to his right ankle, right hand, back and psyche while working as a banquet server for the defendant. The orthopedic injuries were admitted. The defendant denied the claim of an industrial psychiatric injury.

The orthopedist, who performed three surgeries on Ritzhoff's right ankle, Dr. Forman, found Ritzhoff's right ankle permanent and stationary as of October 25, 2005. Save for its significance as the origin of Ritzhoff's psychiatric injuries, the orthopedic injury dropped out of consideration after Dr. Forman found it permanent and stationary.

### The Psychiatric Injuries

As discussed below, the WCJ ultimately found Ritzhoff to be permanently and totally disabled. In reaching this conclusion, the WCJ relied on the opinion of Ritzhoff's treating psychiatrist, Thomas A. Curtis, M.D. (hereafter Dr. Curtis).

Dr. Curtis initially evaluated Ritzhoff on December 14, 2001. During the clinical interview situation, Dr. Curtis noted that Ritzhoff demonstrated diminished cognitive functioning. Ritzhoff's psychological test results indicated that he had severe depression, suicidal ideation, severe anxiety, and total neuroticism. Dr. Curtis found Ritzhoff temporarily totally disabled on a psychiatric basis and in need of emotional treatment.

The defendant made temporary disability payments. There is evidence in the form of Ritzhoff's testimony that at some point in early 2006 the defendant ceased making these payments, claiming that there was no psychiatric disability. This brought about the

2

expedited hearing of May 18, 2006, which was convened for the purpose of determining whether Ritzhoff was temporarily psychiatrically disabled.

### Total Temporary Disability (May 18, 2006)

The hearing commenced with Ritzhoff's testimony that the report that he was permanent and stationary on which the defendant relied was false. Under examination by the WCJ, Ritzhoff testified that his attending psychiatrist told him that psychiatrically he was temporarily totally disabled.

The defendant then began to cross-examine Ritzhoff. Significantly, on cross-examination Ritzhoff effectively admitted working from time-to-time since his injury in 1996. However, the WCJ terminated cross-examination over the defendant's objection and even though the defendant had not finished because of alleged time constraints arising from the expedited nature of the hearing. The defendant made an offer of proof that its investigator would show film of Ritzhoff working around the house and working at an art gallery and "doing other things from 2004 through 5-9-06."

By interim opinion on decision dated May 23, 2006, the WCJ found Ritzhoff temporarily totally disabled from a psychiatric injury that was caused by the orthopedic injury to his ankle. This was based on a medical report that stated that the predominant cause of his "depressive symptoms" was prolonged orthopedic pain, especially from the right ankle injury. This medical report was dated February 24, 1999, and was generated by the Barrington Psychiatric Center. The WCJ noted there was no medical report stating that psychiatrically Ritzhoff was permanent and stationary and that it was "easy to extrapolate from the totality that applicant is still temporarily totally disabled." The WCJ ordered continued temporary disability payments. The WCJ noted that the videotape the defendant sought to have admitted was "more appropriate for later cross-examination (of a doctor and/or applicant as to accuracy of his history) rather than at this stage of the proceedings." The WCJ also noted that Ritzhoff had been in propria persona since 1998.

The appeals board denied the defendant's petition for reconsideration on June 7, 2006.

3

**Psychiatric Reports 2008-2009**

The independent medical evaluator in psychiatry, Arnold Gilberg, M.D., Ph.D. (hereafter Dr. Gilberg) issued a report on July 14, 2008, agreeing with Dr. Curtis that Ritzhoff would become permanent and stationary psychiatrically by December 31, 2008. Dr. Gilberg also opined Ritzhoff's "permanent disability [was] inextricably intertwined between the various injuries in question." Dr. Gilberg apportioned 95 percent to industrial factors and 5 percent to non-industrial factors.[1] However, Dr. Gilberg opined Ritzhoff was not "occupationally feasible from a psychiatric standpoint."

As of August 2008, Ritzhoff had received electric shock therapy and Dr. Curtis requested authorization to treat Ritzhoff's anxiety-mediated Parkinson's-type tremors and for related muscle twitches and tensions. By November 6, 2009, Ritzhoff had attempted suicide by hanging while he was hospitalized. Dr. Curtis opined that it was obvious to him Ritzhoff was totally and permanently disabled on a psychiatric basis.

There now followed three hearings. The first two focused on whether Ritzhoff was psychiatrically permanent and stationary and thus no longer entitled to temporary disability payments. The third hearing ended with the finding that Ritzhoff was permanently disabled. Ritzhoff refused to be cross-examined at all three of these hearings.

**The First Hearing (April 23, 2009)**

<u>The hearing before the WCJ</u>

Ritzhoff requested the April 23, 2009 expedited hearing to resolve the issue of temporary disability benefits, which he claimed had been terminated.

---

[1] Dr. Gilberg believed there was a variety of other stressors related to the chronicity of Ritzhoff's claim. Dr. Gilberg did not provide any further detail in the January 21, 2011 report, regarding the other stressors. However, in the July 14, 2008 report, Dr. Gilberg noted Ritzhoff's history of alcohol abuse and made a similar apportionment.

4

The defense position was that Ritzhoff was permanent and stationary.[2] It is clear that the defense intended to show this at least in part by Ritzhoff's testimony,[3] although the medical reports also supported this conclusion. Dr. Forman, the orthopedic doctor who performed three surgeries on Ritzhoff's right ankle, found Ritzhoff's right ankle permanent and stationary as of October 25 2005. Dr. Gilberg, the independent medical evaluator in psychiatry, issued a report on July 14, 2008, agreeing with treating psychiatrist Dr. Curtis that Ritzhoff would become permanent and stationary psychiatrically by December 31, 2008.

The defendant also sought to re-depose Dr. Gilberg on the amount of permanent disability. The WCJ agreed the defense was entitled to depose Dr. Gilberg but suggested deposition by interrogatories.

After defense counsel's statement about the object of Ritzhoff's cross-examination, the WCJ asked Ritzhoff to take the stand. Ritzhoff stated: "I object to be cross-examined without an attorney." The WCJ told him he was his own attorney, as he indeed had been since 1998.

Ritzhoff's behavior from this point on was remarkable. This was his reaction to being reminded by the WCJ that he had been his own attorney for over 10 years:

"No. I object. I object. I asked for -- Your Honor, I object. Your Honor, I object. One thing, I asked for this trial that you will subpoena Ms. Lomolongo (phonetic) in March to come here and indicate why they cut the benefits without proper authorization and legal condition, which warrants them -- which warrants that all the medical reports have to be together and that is done by approaching the court with a filing, which is titled DOR if I'm not mistaken, and they don't have it. Okay. So Dr. Mitzelfelt objecting in his letter there. If I could, can I read it? Or have you seen that?"

---

[2] Permanent and stationary means that the person's medical condition is not expected to change.

[3] "[Defense counsel]: I believe that after Mr. Von Ritzhoff testifies today, that we will be able to prove that he is permanent and stationary by his own testimony."

After the WCJ told him that defense counsel had the right to ask him questions, Ritzhoff replied that he was not "ready to be cross-examined because I provided the Court with enough information with a violation of this firm and their client to properly inform an evidence by law [*sic*] why they cut my benefits." Next, Ritzhoff took the stand only to deliver a short monologue, concluding: "What I'm saying here, I am not going to testify. I'm tired; I feel sick. I called the doctor and he told me don't -- this Judge has no care about my health. He wants to throw me into the abyss of infinity."

Defense counsel finally got a word in when he stated that he had a due process right to cross-examine Ritzhoff. Ritzhoff's response was to accuse the defense of "criminal activities, a felony, manipulating the medical record." After stating that "you cannot rush somebody who is unrepresented, who has a problem with mental condition" and being told by the WCJ that maybe he should not be representing himself, Ritzhoff's answer was that he had a right to represent himself.

The hearing continued on its downhill path. Defense counsel stated that since he was unable to cross-examine Ritzhoff on the issue before the court, he moved the admission of correspondence by the adjuster Broadspire into evidence. Confused wrangling followed with Ritzhoff interspersing unintelligible comments about various physicians. When defense counsel requested medical records from Glendale Adventist Hospital, Ritzhoff asked whether he could cross-examine defense counsel. The discussion now became even more personal, with Ritzhoff calling defense counsel "a big liar." Although the hearing finally collapsed in inconclusive confusion, one reality did emerge. Ritzhoff was true to his word; he did not testify. This hearing concluded without a word of testimony by Ritzhoff.

While the defense made no offer of proof, it is quite clear what the defense intended to prove by its cross-examination of Ritzhoff. The defense announced at the outset of this hearing that it wanted to prove that Ritzhoff was permanent and stationary. As the aborted cross-examination of May 18, 2006 suggested, the defense intended to elicit testimony that Ritzhoff was working from time-to-time and was functioning normally, which was circumstantial evidence that he was permanent and stationary. In

the process, the defense would inevitably have endeavored to show that Ritzhoff was not credible and thus had not given credible information to attending physicians, including the psychiatrists.

Based on the medical report of psychiatrist Dr. Curtis,[4] the WCJ concluded that Ritzhoff was temporarily totally disabled. The WCJ noted that a psychiatrist's opinion was required on the issue whether Ritzhoff was permanent and stationary and that it was "not known" how Ritzhoff's layperson's testimony could add to or defeat a psychiatrist's opinion regarding Ritzhoff's disability status. The WCJ had made a similar comment during the hearing.

The WCJ erred when he stated that the defense had refused to make an offer of proof at the hearing as to what the defense intended to elicit from Ritzhoff. The defense was never asked, nor did it refuse, to make an offer or proof during this hearing. On the contrary, the defense had made it clear that it wanted to cross-examine Ritzhoff on the question whether he was permanent and stationary.

Reconsideration and the Appeals Board

Defendant filed a petition for reconsideration following the first hearing of April 23, 2009.

The appeals board affirmed the WCJ's order. Agreeing with the WCJ that Ritzhoff's testimony would not be particularly useful in resolving the psychiatric medical question, the appeals board allowed the WCJ's decision on total temporary disability to stand. However, the appeals board noted defendant's legitimate complaints regarding the opportunity to cross-examine Ritzhoff. The appeals board explicitly stated that "[i]f [Ritzhoff] intends to continue to prosecute his claim for workers' compensation benefits, he must submit to cross-examination."

---

[4] Dr. Curtis's report stated that Ritzhoff's condition was declining again and that this case was "best considered as a 100% disability without apportionment."

**The Second Hearing (October 27, 2009)**

<u>The hearing before the WCJ</u>

Only six months had elapsed since the April 2009 expedited hearing. However, Ritzhoff again requested the October 27, 2009 expedited hearing, complaining of the defendant's denial of payment for all treatment. Specifically, Ritzhoff requested reinstatement of treatment with various doctors.[5]

The defendant confirmed its refusal to pay for treatment and benefits because it was denied due process when it was not allowed to cross-examine Ritzhoff. The defendant expressly objected to orders for payment without having a right to question the applicant, to cross-examine Dr. Gilberg, to obtain medical records from Dr. Gilberg, to review all medical records from Glendale Adventist Hospital, and the right to subpoena and review medical records from a new facility. The defendant also asserted its right to question Ritzhoff regarding psychological treatment if the WCJ was ordering psychological treatment.

The WCJ did not allow cross-examination on issues related to temporary total disability. The WCJ stated that this issue was already settled.

Ritzhoff now took the stand. However, he squarely refused at least six times to answer defense counsel's questions. In short, as in the first hearing, Ritzhoff did not testify at the second hearing.

The WCJ claimed the appeals board upheld the decision on temporary total disability and his "position on cross-examining" Ritzhoff. The WCJ found that the defendant's position to discontinue all treatment, despite medical opinions that Ritzhoff's condition would decline, was unwarranted. The WCJ ordered the defendant to reinstate treatment with Dr. Curtis.

---

[5] These doctors included Dr. Curtis, H. Vincent Mitzelfelt, M.D. (hereafter Dr. Mitzelfelt), and Don Rubinstein, Ph.D. (hereafter Dr. Rubinstein). Dr. Mitzelfelt was originally the primary treating physician. However, when the psychiatric claims overtook the orthopedic claims, the WCJ considered Dr. Curtis the primary treating physician. Dr. Rubinstein was a psychologist treating Ritzhoff.

The WCJ ordered the defendant to pay for psychiatric treatment and temporary total disability as previously ordered. The WCJ did not order orthopedic treatment in light of Ritzhoff's refusal to be cross-examined.

Reconsideration and the Appeals Board

The defendant again petitioned for reconsideration.[6] The petition argued that the defendant was deprived of its due process rights when the WCJ ordered benefits after Ritzhoff refused to be cross-examined at the hearing.

The WCJ's report recommended denial of the petition. The WCJ believed "[d]efendant [was] really becoming as out-of-control as applicant." On the issue of the defendant's due process, the WCJ did not order non-psychiatric benefits so there was no denial of due process and no prejudice. As for psychiatric benefits, the WCJ found the issue was res judicata given a prior determination.[7] The WCJ stated he could not in good conscience abruptly cut off Ritzhoff from psychiatric treatment when he was on several psychiatric medications and required monitoring.

The appeals board denied defendant's petition for reconsideration on April 20, 2010. The appeals board found the new decision was favorable to defendant in that it authorized defendant to stop providing non-psychiatric care. The appeals board clarified its earlier affirmation of the WCJ's decision, stating again that if Ritzhoff wanted to continue to receive benefits, he would have to testify. The appeals board let the WCJ's decision on temporary total disability "stand, but only 'for now.'"

---

[6] The defendant simultaneously filed a petition for removal of the WCJ pursuant to Labor Code section 5310. Ritzhoff also filed a petition for reconsideration seeking reinstatement of non-psychiatric treatment. Each of the petitions was denied.

[7] It appears the WCJ was referring to the appeal board's opinion following the first hearing. Specifically, that decision allowed the WCJ's order continuing temporary total disability benefits to "stand." The appeals board's response to the writ of review indicates that the prior determination referred to was the appeal board's opinion following the May 18, 2006 hearing.

9

## Psychiatric Reports 2011-2012

On August 10, 2011, Dr. Curtis disagreed with Dr. Gilberg's 5 percent apportionment to Ritzhoff's prior history of alcoholism. Dr. Curtis rather noted Dr. Gilberg's opinion that Ritzhoff was not able to compete in the open labor market from a psychiatric standpoint. Commenting on Ritzhoff's continued deteriorating condition, Dr. Curtis again opined that Ritzhoff was 100 percent totally and permanently disabled with no apportionment.

In his July 16, 2012 report, Dr. Curtis continued to opine that "this case should probably best be considered as a 100% disability case without apportionment."

## The Third Hearing (May 30, 2013)

### The hearing before the WCJ

The matter came on for hearing over the objection of the defendant on May 30, 2013. Discovery remained open until the final mandatory settlement conference on August 28, 2012. However, since the October 27, 2009 hearing, the defendant still was unable to obtain the deposition of Dr. Gilberg, who had recused himself from the matter.

At the hearing, Ritzhoff preemptively refused to respond to any questions by defendant.

Defendant made an offer of proof as to the testimony it sought on cross-examination: "Applicant's ability to function physically, mentally, his ability to work, and whether he did work during March 1996 through the present, which would affect the TD rate, overpayment, and PD. In past depositions, the applicant testified that he did not work on certain occasion, where there was proof of him working. Lack of credibility can only be observed on cross-examination, which goes to the content of the medical reports."

Following the third hearing, on October 10, 2013, the WCJ found Ritzhoff sustained industrial injuries on March 16, 1996, to his right ankle, right hand, back, and his psyche.

The WCJ acknowledged no evidence was produced regarding earnings, either in testimony or by wage statement. The WCJ accordingly found a reasonable rate of

10

earnings within the range claimed by the parties. The WCJ found Ritzhoff had weekly earnings of $320 at the time of the injury, entitling him to temporary total disability and permanent disability rates of $213.33 per week. The WCJ found Ritzhoff totally temporarily disabled from March 17, 1996 through December 31, 2008, and from October 13, 2009 through April 23, 2010. Ritzhoff was found totally permanently disabled, entitling him to benefits from January 1, 2009 through October 12, 2009, and from April 24, 2010 for life. The WCJ found no basis for apportionment.

In reaching these findings, the WCJ found the reporting of Dr. Mitzelfelt unreliable. The WCJ also questioned the final opinion of panel qualified medical evaluator in orthopedics, Dr. Jonathan Jaivin.[8] Dr. Jaivin's final report apportioned 95 percent of the orthopedic injury to preexisting conditions whereas his earlier May 30, 2006 report, offered no opinion on apportionment. The WCJ therefore disregarded Dr. Jaivin's final report, and relied instead on Dr. Jaivin's May 30, 2006 report, and Dr. Forman's February 17, 2006 report,[9] on the orthopedic injury.

Regarding the psychiatric injury, the WCJ relied upon the opinion of Dr. Curtis, with which Dr. Gilberg mostly agreed. The WCJ found Dr. Gilberg's apportionment of 5 percent to Ritzhoff's history of drinking not supported given Dr. Gilberg's failure to explain "how or why this prior stint, especially if not an ongoing problem" would have caused 5 percent of the disability.

The WCJ addressed the defendant's due process concerns arising from the inability to cross-examine Ritzhoff and Dr. Gilberg. The WCJ ruled defendant's offer of proof did not establish that cross-examination of Ritzhoff would defeat or reduce the award. Ritzhoff, as a layperson, was ill-equipped to render opinions regarding his own

---

[8] Dr. Jaivin's relationship with Ritzhoff deteriorated over the course of the case. Ritzhoff complained to Dr. Gilberg that he felt maligned by Dr. Jaivin, who he felt changed his testimony at the time of deposition.

[9] Dr. Forman apportioned 25 percent of Ritzhoff's objective factors of disability to his preexisting condition and 75 percent to his industrial injury of March 18, 1996.

mental condition.  Additionally, Dr. Gilberg was deposed once before and, given the decision was not based on Dr. Gilberg's opinion, the WCJ found the issue of Dr. Gilberg's renewed deposition was moot.

Reconsideration and the Appeals Board

The defendant petitioned for reconsideration.  The defendant's main argument was that its due process rights were violated when benefits were awarded without the opportunity to cross-examine Ritzhoff and Dr. Gilberg.

The WCJ's report recommending denial of defendant's petition for reconsideration largely quoting from his own opinion on decision.

On December 20, 2013, the appeals board denied the defendant's petition for reconsideration, adopting and incorporating the WCJ's report, and issued no opinion of its own.

**The Rationale why the WCJ and Appeals Board Dispensed with Cross-examination**

The basis for continuing and awarding substantial benefits without cross-examination was that the issue involved a psychiatric medical opinion which Ritzhoff's layperson testimony could neither supplement or defeat.  The appeals board agreed Ritzhoff's testimony would not be useful in resolving the medical question of permanent and stationary status.

Significantly, however, the appeals board twice noted that Ritzhoff, if he intended to recover, should submit himself to cross-examination.  This happened after the first and second hearing.  There is no explanation why the appeals board simply abandoned its position on this issue following the third hearing.

**DISCUSSION**

1.     **Cross-examination as an Element of a Fair Trial or Hearing**

"'For two centuries past, the policy of the Anglo-American system of Evidence has been to regard the necessity of testing by cross-examination as a vital feature of the law.  The belief that no safeguard for testing the value of human statements is comparable to that furnished by cross-examination, and the conviction that no statement (unless by special exception) should be used as testimony until it has been

12

probed and sublimated by that test, has found increasing strength in lengthening experience.'" (*Greene v. McElroy* (1959) 360 U.S. 474, 497, quoting 5 Wigmore, Evidence (3d ed. 1940) § 1367.) "There are few subjects, perhaps, upon which [it] and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." (*Pointer v. Texas* (1965) 380 U.S. 400, 405.) The right to cross-examination is protected by the confrontation clause of the Sixth Amendment which is applicable to the states. (*Id.* at pp. 403-405.)

We address in this case therefore nothing less than one of the fundamental guarantees of a fair trial[10] or, as in this case, a fair hearing, for there is no doubt that the right of cross-examination is guaranteed to the parties in workers' compensation proceedings. (*Pacific Employers Ins. Co. v. Industrial Accident Com.* (1941) 47 Cal.App.2d 713, 715.) This right is not only guaranteed as a matter of constitutional law, it is specifically guaranteed by the Administrative Procedure Act's subdivision (b) of Government Code section 11513.[11] As far as the purposes of cross-examination are concerned, one cannot improve on the explanation of the role of cross-examination given by Wigmore, quoted in *People v. Whitehead* (1952) 113 Cal.App.2d 43, 48-49, which we set forth in the margin.[12]

---

[10] "The fundamental character of this right [of confrontation and cross-examination] is beyond question." (*People v. Louis* (1986) 42 Cal.3d 969, 982.)

[11] "Each party shall have these rights: to call and examine witnesses, to introduce exhibits; to cross-examine opposing witnesses on any matter relevant to the issues even though that matter was not covered in the direct examination; to impeach any witness regardless of which party first called him or her to testify; and to rebut the evidence against him or her. If respondent does not testify in his or her own behalf he or she may be called and examined as if under cross-examination." (Gov. Code, § 11513, subd. (b).)

[12] "'The remaining and qualifying circumstances of the subject of testimony will probably remain suppressed or undisclosed, not merely because the witness frequently is

13

Give what the purposes of cross-examination are, we must correct the misperception shared by the WCJ and the appeals board that, as a layperson, Ritzhoff had nothing to add as a witness. The purpose of cross-examination is not limited to eliciting facts or information about the merits of the case. "[O]ne of the important objects of the right of confrontation was to guarantee that the fact finder had an adequate opportunity to assess the credibility of witnesses." (*Berger v. California* (1969) 393 U.S. 314, 315.)

California law has been in accord from the beginning, singling out the importance of cross-examination in inquiring into the credibility of a witness. (*Neal v. Neal* (1881) 58 Cal. 287, 288; *Sharp v. Hoffman* (1889) 79 Cal. 404, 408.) Indeed, the rule is that on cross-examination ". . . a wide latitude is permitted for the purpose of testing accuracy or credibility. This is especially true if the witness is himself a party to the action." (*Stromerson v. Averill* (1940) 39 Cal.App.2d 118, 125.)

The importance of cross-examination as a means of testing and attacking the credibility of a witness is undiminished in the modern era. (E.g., *People v. Guthreau* (1980) 102 Cal.App.3d 436, 445.) In fact, Witkin writes that the "chief purpose of cross-examination is to test the credibility, knowledge and recollection of the witness." (3 Witkin, Cal. Evidence (5th ed. 2012) Presentation at Trial, § 236, p. 345.)

As we discuss in the next section, the record in this case contains strong indications that Ritzhoff's credibility is very much at issue.

---

a partisan, but also and chiefly because his testimony is commonly given only by way of answers to specific interrogatories . . . and the counsel producing him will usually ask for nothing but the facts favorable to his party. If nothing more were done to unveil all the facts known to this witness, his testimony (for all that we could surmise) might present half-truths only. Someone must probe for the possible (and usual) remainder. The best person to do this is the one most vitally interested, namely, the opponent. Cross-examination, then, i.e. further examination by the opponent, has for its first utility the extraction of the remaining qualifying circumstances, if any, known to the witness, but hitherto undisclosed by him.' (Wigmore, vol. V, [3d ed.] § 1368, p. 33.)" The citation now is to 5 Wigmore (Chadbourn Rev.) § 1368.

**2.      The Lack of Cross-Examination was Prejudicial**

It goes without saying that this is not a case where cross-examination was curtailed. This is a case where cross-examination did not take place except for the few minutes of cross-examination on May 18, 2006, which was in any event curtailed over the defense's objection, was meaningless. We therefore address an admittedly unusual situation where a litigant, the defendant in this case, was completely deprived of the right of cross-examination.

"A denial of due process to a party ordinarily compels annulment of the [appeal board's] decision only if it is reasonably probable that, absent the procedural error, the party would have attained a more favorable result." (*Beverly Hills Multispecialty Group, Inc. v. Workers' Comp. Appeals Bd.* (1994) 26 Cal.App.4th 789, 806.) "However, if the denial of due process prevents a party from having a fair hearing, the denial of due process is reversible per se." (*Id.* at p. 806.)

When, as in this case, a party is completely denied the fundamental right to cross-examine the adverse party, there has not been a fair hearing. No one would quarrel with the proposition that a litigant is entitled to an unbiased judge or hearing officer and that a biased judge is the very definition of an unfair hearing. Cross-examination of a witness, and especially the adverse party, is similarly part and parcel of a fair hearing. The high station which the right of confrontation occupies in our jurisprudence admits of no other conclusion. There is therefore a case to be made that the error here was reversible per se.

We nevertheless consider whether the error was prejudicial.

In this case, Ritzhoff's conduct over the issue of his cross-examination was so irregular as to make an examination into the question of his credibility practically a necessity. We use the word credibility here in its widest sense, which includes the ability to render an accurate account of events. The credibility of a person who is given to manic outbursts of the kind shown by this record is, at a minimum, seriously drawn into question. The wild flights into conspiracy theories, accusations of criminal misconduct and even personal invective do not necessarily reflect a mind given to an accurate recitation of events, particularly events as complex as those underlying psychiatric

15

histories. While we do not presume to render an opinion on Ritzhoff's credibility, leaving that to the finder of fact, it is clear that his very conduct, particularly during the first hearing on April 23, 2009, moved that issue center-stage and required reasoned, *and informed*, analysis. *If* Ritzhoff was not credible, serious doubts might arise about his characterizations of his physical, mental and emotional state which in turn could impact the assessment of the extent of his permanent disability.

The defense stated at various times that it was in possession of information composed of surveillance and other sources that showed that Ritzhoff had in fact worked and was engaging in other normal activities. None of this information or evidence ever saw the light of day. The WCJ in fact dismissed it sight unseen at the end of the hearing on May 18, 2006, with the comment that it was not relevant to a cross-examination of Ritzhoff. But what if it were shown by the defense that Ritzhoff was in fact working and maintained a relatively normal lifestyle? This would surely have an impact on the determination of the extent or percentage of his permanent disability.

In short, had Ritzhoff been cross-examined, particularly in light of evidence that showed him working, it is reasonably probable that the defense might have obtained a more favorable result. A more favorable result is, of course, anything less than total permanent disability.

**3.     The Appeals Board's Decision Exceeded its Powers and is Unreasonable**

When the ". . . irregularities constitute a denial of due process, the [appeals board's] actions are obviously beyond the Board's powers." (2 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed.) § 34.18[2], p. 34-33.) It is also true that a denial of due process renders the appeals board's decision unreasonable. (2 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed.) § 34.18[1], p. 34-33.) A writ of review may issue if the appeals board acted in excess of its jurisdiction or if its decision is unreasonable. (Lab. Code, § 5952, subds. (a) & (c).)

**4.     Additional Issues on Remand**

We note there is no determination of the disability caused by the orthopedic injury or its apportionment. While it does appear that the psychiatric medical experts had Dr.

16

Forman's opinion on the apportionment of the orthopedic injury, there is no analysis regarding its impact on the psychiatric portion of the injury. In addition, there is no indication in the voluminous record that Dr. Curtis had the reports of Dr. Jaivin when he formed his opinions on apportionment. Given that the medical experts concluded that the psychiatric injury arose exclusively from the admitted orthopedic injury, the apportionment of the orthopedic injury may have an impact on the apportionment of the psychiatric injury. This issue needs to be addressed.

In addition to clarifying the apportionment of the orthopedic injury, the apportionment of the psychiatric injury must also be completed. Dr. Gilberg, who apportioned 5 percent to nonindustrial causes, refused to continue his participation in the case because of harassment by Ritzhoff. Despite the defendant's efforts and the WCJ's acknowledgment of the defendant's right to a renewed deposition, Dr. Gilberg was not re-deposed. We find that Dr. Gilberg must submit himself to deposition at the very least on the issue of apportionment. Whether the WCJ relied on Dr. Gilberg's apportionment is immaterial. The defendant must be afforded the opportunity to justify the basis of Dr. Gilberg's apportionment by cross-examining him or presenting rebuttal evidence through a renewed deposition.

## 5. The Appeals Board's Contentions are Without Merit

The appeals board contends that the "issues of psychiatric industrial injury and temporary disability are final and the only issues properly before this Court are earnings and permanent disability/apportionment."

In workers' compensation, an order is deemed final if it determines a substantial issue basic to the employee's entitlement to benefits. (2 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed.) § 34.10[2], p. 34-10, citing *Safeway Stores, Inc. v. Workers' Comp. Appeals Bd.* (1980) 104 Cal.App.3d 528, 533, fn. 2.) Thus, decisions regarding the territorial jurisdiction of the appeals board, the existence of an employment relationship or the statute of limitations are deemed final for purposes of review. This type of issue has been called a "threshold" issue. (*Ibid.*)

17

Whether the psychiatric injury was industrial is not a threshold issue. It is one of the principal issues on the merits. It is only a final order, decision, or award of the appeals board that is reviewable by this court by way of a petition for a writ of review. (Lab. Code, §§ 5900, 5901; *Maranian v. Workers' Comp. Appeals Bd.* (2000) 81 Cal.App.4th 1068, 1074; 2 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed.) § 34.10[2], p. 34-9.) The disposition by the appeals board of one of several issues on the merits is not a final decision of the appeals board. The same is true of the award of temporary disability which, for the purposes of review by this court, is not a final decision of the appeals board.

The only final decision of the appeals board for the purposes of review by this court is its decision of December 20, 2013, denying the petition for reconsideration and adopting and incorporating the WCJ's report as its own decision. This is the decision that awarded Ritzhoff total permanent disability and which followed what we have called in this opinion the third hearing.

The appeals board also contends that the defendant was not denied due process. In support of this claim, the appeals board claims that the defendant had ample opportunity to cross-examine Ritzhoff and that Ritzhoff was cross-examined on May 18, 2006.

The cross-examination on May 18, 2006, was terminated prematurely over the objection of the defendant, as we have pointed out. Thereafter, during the following three hearings, including the ultimate hearing that resulted in the final award, Ritzhoff adamantly, and successfully, refused to submit to cross-examination. This included the hearing that led to the award of permanent total disability where Ritzhoff, obviously emboldened by his earlier successes, simply announced that he was not going to subject himself to cross-examination, an announcement the WCJ meekly accepted.

The appeals board states that during the hearing held on April 23, 2009, which we have called the first hearing, the defendant had the opportunity yet failed to make an offer of proof as to "what further cross-examination would accomplish." However, the record shows that defense counsel stated that he had a "due process right" to cross-examine Ritzhoff, that he had been prevented from questioning Ritzhoff and that he had not been

18

able to cross-examine Ritzhoff. Given that defense counsel opened this hearing with the statement that his cross-examination of Ritzhoff would prove that Ritzhoff was permanent and stationary, the record could hardly be clearer both as to what the defense's objective was with the cross-examination and that the defense was objecting on due process grounds to being precluded from cross-examination.

During the second hearing, when Ritzhoff again refused to be cross-examined, defense counsel again stated that the defense had a due process right to examine Ritzhoff. A little later, he repeated that he had the right to question Ritzhoff. Defense counsel next stated that he had the right to question Ritzhoff about the psychological treatment he received.

Finally, during the third hearing on May 30, 2013, the defense made an explicit offer of proof which, among other things, specifically pinpointed credibility as one of the objectives of the cross-examination that had been completely denied. We again set forth that offer of proof.[13]

The appeals board is simply wrong in claiming that the defense did not object and did not make an offer of proof as to what it intended to accomplish with Ritzhoff's cross-examination.

The appeals board's view that the defense should have sought review of its decision regarding cross-examination following the first and second hearings ignores the plain fact these were not final decisions of the appeals board and thus were not reviewable in this court under the aegis of a writ of review.

We find it inexplicable that the appeals board twice warned Ritzhoff that he must subject himself to cross-examination, only to abandon that view when it came to its final decision. The position that the appeals board has taken in this court that there was no

---

[13] "Applicant's ability to function physically, mentally, his ability to work, and whether he did work during March 1996 through the present, which would affect the TD rate, overpayment, and PD. In past depositions, the applicant testified that he did not work on certain occasion, where there was proof of him working. Lack of credibility can only be observed on cross-examination, which goes to the content of the medical reports."

19

denial of due process does not square with its two prior statements following the first and second hearing that Ritzhoff had to subject himself to cross-examination.

The appeals board's claim that its decision on permanent disability is supported by substantial evidence is beside the point. The appeals board exceeded its powers when it adopted a decision as its own that was flawed by a denial of due process. Because the appeals board exceeded its powers, its decision must be set aside. (Lab. Code, § 5952, subd. (a).)

## Disposition

The decision of the Workers' Compensation Appeals Board is annulled and the case is remanded with directions for further proceedings consistent with this opinion.


CHANEY, J.


We concur:


ROTHSCHILD, P. J.


JOHNSON, J.

Filed 1/29/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| OGDEN ENTERTAINMENT SERVICES et al., <br><br> Petitioner, <br><br> v. <br><br> WORKERS' COMPENSATION APPEALS BOARD and KRISTIAN VON RITZHOFF, <br><br> Respondents. | B254082 <br><br> (W.C.A.B. Nos. ADJ4599548, ADJ1414058) <br><br> ORDER CERTIFYING OPINION FOR PUBLICATION AND DENYING REHEARING <br><br> [NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion filed in the above-entitled matter on December 31, 2014, was not certified for publication in the Official Reports. Pursuant to California Rules of Court, rule 8.1105(c), this opinion is ordered published in the Official Reports.

Respondent's petition for rehearing is denied.

_____

ROTHSCHILD, P. J.                    CHANEY, J.                    JOHNSON, J.