Filed 9/18/24 (unmodified opn. attached)

## CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| JOSEPH MAYOR,<br><br>  Petitioner,<br><br>v.<br><br>WORKERS' COMPENSATION APPEALS BOARD and ROSS VALLEY SANITATION DISTRICT,<br><br>  Respondents. | A169465<br><br>(WCAB Case No. ADJ10036954)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING; NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on August 28, 2024, be modified as follows:

On page 23, a footnote is inserted following the last sentence of the first full paragraph which reads, "The changes to former section 5909 are currently set to expire in July 2026, but the Legislature's prompt response to the Board's concerns should reassure the Board that the Legislature will continue to monitor the issue and address it again if it persists." This new footnote will be "footnote 8," and subsequent footnotes shall be renumbered accordingly. The new footnote 8 reads as follows:

> "In a petition for rehearing, the Board makes an offer of proof that changes to section 5909 were recommended before

1

*Zurich* was decided and were intended to give the Board more time to consider all petitions for reconsideration due to workload issues, not just to avoid the problem of administrative irregularities like the ones in *Zurich* and here.  The Board failed to submit any of this in response to our request for supplemental briefing, so we need not consider it.  (*Samantha B. v. Aurora Vista Del Mar, LLC* (2022) 77 Cal.App.5th 85, 109.)  However, we note that even if the Legislature did not specifically intend to respond to *Zurich*, according to the Board, it did intend to respond to the workload problem that *Zurich* identified.  The Legislature also enacted the amendment after *Zurich* and expressed no disagreement with it.  (*Blankenship v. Allstate Ins. Co.* (2010) 186 Cal.App.4th 87, 96 ["The Legislature is deemed to be aware of judicial decisions already in existence and to have enacted or amended a statute in light thereof"].)  And in any event, even if it was unintentional, in the immediate future the change to section 5909 will avoid the risk of administrative irregularities depriving the Board of jurisdiction to rule on the merits of petitions for reconsideration.  We remain confident, given the Legislature's demonstrated responsiveness to these issues, that the Legislature will take any further action necessary to address the Board's concerns about the impacts of the section 5909 deadline."

There is no change in judgment.

The petition for rehearing is denied.

Date: _____     _____ P. J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JOSEPH MAYOR,<br><br>        Petitioner,<br><br>v.<br><br>WORKERS' COMPENSATION APPEALS BOARD and ROSS VALLEY SANITATION DISTRICT,<br><br>        Respondents. | A169465<br><br>(WCAB Case No. ADJ10036954) |

Joseph Mayor seeks a writ of mandate directing the Workers' Compensation Appeals Board (Board) to rescind its order granting Ross Valley Sanitation District's (Ross Valley) petition for reconsideration of an award of permanent disability. When Ross Valley's petition was before the Board, former section 5909 of the Labor Code[1] (Stats. 1992, ch. 1226, § 5, p. 5766) (former section 5909) stated, "A petition for reconsideration is deemed to have been denied by the appeals board unless it is acted upon within 60 days from the date of filing." The Board issued its order more than 60 days after Ross Valley filed its

---

[1] Undesignated statutory citations are to the Labor Code.

1

petition. We agree with Mayor and the recent decision in *Zurich American Ins. Co. v. Workers' Comp. Appeals Bd.* (2023) 97 Cal.App.5th 1213 (*Zurich*) that the Board's action after 60 days exceeded its jurisdiction. While this appeal was pending, the Legislature amended section 5909 so that the 60-day deadline now starts when the Board receives the case file, not when the petition for reconsideration is filed. This amendment at once implicitly confirms *Zurich*'s interpretation of the former statute and puts to rest the Board's concerns about the consequences of that interpretation for the future. We will therefore grant Mayor's petition and issue the requested writ of mandate.

## BACKGROUND

On March 2, 2023, a workers' compensation administrative law judge (WCJ) issued an award of total permanent disability in favor of Mayor based on an industrial injury he suffered in December 2013 during his employment by Ross Valley.

Ross Valley filed a petition for reconsideration with the Board on March 23, 2023. The Board's electronic filing system, Electronic Adjudication Management System (EAMS), showed it was received the same day. Mayor filed his answer to the petition on April 3, 2023.

At the time, former section 5909 stated, "A petition for reconsideration is deemed to have been denied by the appeals board unless it is acted upon within 60 days from the date of filing." (Stats. 1992, ch. 1226, § 5, p. 5766.) On June 5, 2023, 74 days after Ross Valley filed its petition, Ross Valley wrote to the

2

Board, inquiring about the status of its petition and noting that it had been more than 60 days since Ross Valley had filed it.

On July 19, 2023, Mayor requested a hearing to enforce the WCJ's award.

On August 14, 2023, 144 days after Ross Valley filed its petition, the Board issued a document titled, "Opinion and Order Granting Petition for Reconsideration."[2] Attached to the Board's order granting reconsideration was a document titled, "Notice Pursuant to *Shipley v. Workers' Comp. Appeals Bd.* (1992) 7 Cal.App.4th 1104 [57 Cal.Comp.Cases 493]." This notice states, "Reconsideration has been sought with regard to the decision filed on March 2, 2023. Labor Code section 5909 provides that a petition for reconsideration is deemed denied unless the Workers' Compensation Appeals Board (Appeals Board) acts on the petition within 60 days of filing. (Lab. Code, § 5909.) The petition(s) was filed on March 23, 2023. The Appeals Board first received notice of the petition(s) on or about June 15, 2023. (*Shipley v. Workers' Comp. Appeals Bd.* (1992) 7 Cal.App.4th 1104 [57 Cal.Comp.Cases 493] [allowing tolling as a matter of due process.].) The Opinion and Order Granting Petition for Reconsideration filed simultaneously with this Notice may be considered timely if issued within 60 days of the Appeals Board receiving notice of the petition(s). (*Id.*)"

---

[2] We have omitted capitalization and boldface from all quotations from the board's orders in this case.

3

Mayor wrote to the Board in September 2023, asking it to clarify why it first received notice of the petition on June 15, 2023, when Ross Valley filed it on March 23, 2023.

After receiving no reply, Mayor filed his petition for writ of mandate on January 9, 2024, asking us to direct the Board to rescind its order granting reconsideration because former section 5909 dictated that the Board lost jurisdiction over the matter 60 days after Ross Valley filed its petition for reconsideration. On January 26, 2024, the Board issued a document titled, "Opinion and Order Granting Petition for Reconsideration and Decision After Reconsideration." The Board then reconsidered and rescinded that order and issued a revised version on February 2, 2024. The revised order stated that the Board was rescinding the WCJ's award and returning the matter to the trial level for further proceedings.

According to the revised order, "due to an administrative irregularity" that was not the fault of either party, the Board did not receive Ross Valley's petition for reconsideration until more than 60 days after the date Ross Valley filed it, March 23, 2023. EAMS, which the Board does not control, does not give the Board direct notification of filings.[3] Instead, the staff of the district

_____

[3] According to a recent Board decision in another case, the Administrative Director of the Division of Workers' Compensation is responsible for the EAMS software. (*Scheuing v. Lawrence Livermore National Laboratory* (2024) 89 Cal.Comp.Cases 325, 332; see also § 111 [Board "shall exercise all judicial powers vested in it under this code. In all other respects, the Division of Workers' Compensation is under the control of the administrative director"].)

4

office must manually notify the Board that a party is requesting reconsideration and transmit the case to the Board. Mistakes and delays from "normal human error" can thwart the manual transmission of information from the district offices to the Board. When this occurred, the Board's practice was to treat the 60-day deadline in former section 5909 as tolled and issue a decision on the petition within 60 days of receipt of the petition. The Board's order stated that Ross Valley secured a statutory right to reconsideration upon timely filing its petition for reconsideration, so its conduct "is not and should not be at issue."

We issued an order to show cause why Mayor's petition should not be granted. The Board attached to one of its filings a copy of its February 2024 order.

While Mayor's petition was pending in this court, the Legislature enacted Assembly Bill No. 171 (2023–2024 Reg. Sess.) (Assembly Bill 171), which amended former section 5909. (Stats. 2024, ch. 52, § 27.) Section 5909 now states, "(a) A petition for reconsideration is deemed to have been denied by the appeals board unless it is acted upon within 60 days from the date a trial judge transmits a case to the appeals board. [¶] (b)(1) When a trial judge transmits a case to the appeals board, the trial judge shall provide notice to the parties of the case and the appeals board. [¶] (2) For purposes of paragraph (1), service of the accompanying report, pursuant to subdivision (b) of Section 5900, shall constitute providing notice. [¶] (c) This section shall remain in effect only until July 1, 2026, and as of that date is repealed."

5

The former version of section 5909 is currently set to be reinstated on July 1, 2026.  (Stats. 2024, ch. 52, § 28.)[4]

## DISCUSSION

### I. Workers' compensation system and standard of review

The Board is a court of limited jurisdiction authorized by the California Constitution to exercise a portion of the state's judicial power.  (Cal. Const., art. XIV, § 4; *Fremont Indemnity Co. v. Workers' Comp. Appeals Bd.* (1984) 153 Cal.App.3d 965, 970; *Kaiser Co. v. Industrial Acc. Commission* (1952) 109 Cal.App.2d 54, 57–58.)  The Board authorizes and empowers WCJs to hear and decide cases.  (§§ 27, 5309, 5310, 5313; Cal. Code Regs, tit. 8, § 10330.)  "Orders, findings, decisions and awards issued by a workers' compensation judge shall be the orders, findings, decisions and awards of the Workers' Compensation Appeals Board unless reconsideration is granted."  (Cal. Code Regs., tit. 8, § 10330.)

Within 20 days of an order or award by a WCJ, an aggrieved person may petition the Board for reconsideration.  (§§ 5900, subd. (a), 5903.)  Section 5903 specifies the following exclusive grounds for a petition for reconsideration:  (1) the WCJ acted without or in excess of its powers; (2) the order or award was procured by fraud; (3) the evidence does not justify the findings of fact; (4) the petitioner has discovered new evidence that could not have been discovered and produced earlier; and

---

[4] We invited the parties to submit supplemental briefing addressing the impact of the amendment.

6

(5) the findings of fact do not support the order or award. (§ 5903, subds. (a)–(e).) The Board can also grant reconsideration on its own motion within 60 days of the order or award. (§ 5900, subd. (b).)

Within 15 days of the filing of a petition for reconsideration, the WCJ must either prepare a report and recommendation on the petition, rescind the award or order and initiate further proceedings, or rescind the award or order and issue an amended award or order. (Cal. Code Regs., tit. 8, § 10961.)

The Board's ruling on a petition for reconsideration, as well as any Board decision following reconsideration, must be in writing and specify the evidence relied upon and the reasons for the decision. (§ 5908.5.) If the Board grants reconsideration of a WCJ's order or award, it can decide the matter on the existing record while resolving conflicts in the evidence and making its own credibility determinations, or it can return the case to the WCJ for further proceedings. (§ 5907; *Rubalcava v. Workers' Comp. Appeals Bd.* (1990) 220 Cal.App.3d 901, 908.)

Section 5950 allows anyone affected by an order of the Board to file a petition for writ of review in the Court of Appeal or Supreme Court within 45 days of the denial of a petition for reconsideration or the filing of a decision after reconsideration. Judicial review "is limited to determining whether the Board acted 'without or in excess of its powers' and whether its decision was unreasonable, not supported by substantial evidence, or procured by fraud." (*Department of Corrections & Rehabilitation*

7

*v. Workers' Comp. Appeals Bd.* (2018) 27 Cal.App.5th 607, 617; § 5952.)  A court is not permitted "to hold a trial de novo, to take evidence, or to exercise its independent judgment on the evidence."  (§ 5952.)  "The findings and conclusions of the appeals board on questions of fact are conclusive and final and are not subject to review."  (§ 5953.)

"Unless clearly erroneous, the Board's interpretation of workers' compensation laws is entitled to great weight. [Citation.]  'Nevertheless, issues of statutory interpretation and questions of law are subject to our independent review, and we need not defer to the [Board's] legal determinations where they are contrary to the plain meaning of the statute or prevailing case law.'  [Citation.]  When the statutory language is clear and unambiguous, there is no room for the Board's interpretation." (*Department of Corrections & Rehabilitation v. Workers' Comp. Appeals Bd.*, *supra*, 27 Cal.App.5th at p. 617.)

## II.    The Board's Jurisdiction to Order Reconsideration

### A.    *Legal background and* Zurich

Mayor argues that when the Board failed to act on Ross Valley's petition for 60 days, former section 5909 dictated that it was denied by operation of law.  According to Mayor, the Board's attempt to grant the petition on August 14, 2023, 144 days after it was filed, was therefore in excess of its jurisdiction and must be set aside.  *Zurich* recently accepted this argument in factual and procedural circumstances essentially identical to those here, and Mayor urges us to follow it.  The Board, conversely, seeks to minimize, distinguish, or refute *Zurich*'s reasoning on a variety of

8

grounds. Because *Zurich* is central to the parties' arguments, we begin by reviewing it and the legal principles it applied.

Statutory deadlines are either mandatory or directory. (*Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 340 (*Kabran*).) "Whether a requirement is mandatory or directory is determined largely by its effect: 'If the failure to comply with a particular procedural step does not invalidate the action ultimately taken, . . . the procedural requirement is referred to as "directory." If, on the other hand, it is concluded that noncompliance does invalidate subsequent action, the requirement is deemed "mandatory." ' " (*Ibid.*; *People v. Allen* (2007) 42 Cal.4th 91, 101 [directory statute can be enforced in ways other than invalidation of noncompliant action, " 'such as injunctive relief, mandamus, or monetary damages' "].)

Mandatory deadlines can be further classified depending on how a violation of the deadline affects a court's jurisdiction. Violations of some statutes affect a court's fundamental jurisdiction in the sense of entirely depriving the court of power to hear or determine the case or authority over the subject matter. (*Law Finance Group, LLC v. Key* (2023) 14 Cal.5th 932, 949; see *Zurich*, *supra*, 97 Cal.App.5th at pp. 1226–1227.) Actions in violation of these statutes are void and can be challenged for the first time on appeal or at any time by collateral attack. (*Kabran*, *supra*, 2 Cal.5th at p. 339.) Equitable doctrines cannot excuse the failure to comply with such deadlines. (*Law Finance Group*, at p. 950.) Other mandatory deadlines are jurisdictional in the sense that an action in violation can be set

9

aside, but the action "is 'valid until set aside, and parties may be precluded from setting it aside by such things as waiver, estoppel, or the passage of time.' " (*Kabran*, at p. 340; accord, *Law Finance Group*, at pp. 951–952.)  Because of the harsh consequences of depriving a court of fundamental jurisdiction, the courts presume that statutes do not limit courts' fundamental jurisdiction absent a clear indication of legislative intent.  (*Law Finance Group*, at p. 950.)

In *Zurich*, the Board granted a petition for reconsideration more than nine months after it was filed.  (*Zurich*, *supra*, 97 Cal.App.5th at p. 1224.)  The opposing party filed a petition for writ of mandate challenging the order on jurisdictional grounds.  (*Id.* at p. 1226.)  *Zurich* first concluded that the litigant's jurisdictional argument was "the proper subject of writ relief because the question involves statutory interpretation, not administrative discretion." (*Ibid*.)  *Zurich* also noted that the petition did not challenge the merits of the Board's decision to grant reconsideration, merely its authority to rule on the petition once it was deemed denied under former section 5909. (*Zurich*, at p. 1226.)  In *Zurich*'s view, the party opposing reconsideration "lacked an adequate remedy at law if it had to wait for the conclusion of a void procedure to seek relief in this court." (*Ibid*.)

On the merits, *Zurich* held that former section 5909 was mandatory and actions in violation of it were in excess of the Board's jurisdiction because it established a 60-day deadline and imposed the consequence that if the Board did not act by the deadline the petition was "deemed to have been denied." (Former

10

§ 5909; *Zurich, supra,* 97 Cal.App.5th at pp. 1230–1231.) *Zurich* noted that the Supreme Court had held that the Legislature's imposition of a consequence or penalty indicates an intent to make a deadline jurisdictional in either sense of the term. (*Id.* at p. 1231, citing *Kabran, supra,* 2 Cal.5th at p. 344.)

*Zurich* also relied on the California Constitution's statement of the purpose of the workers' compensation system, which is to "accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character." (Cal. Const., art. XIV, § 4; see *Zurich, supra,* 97 Cal.App.5th at p. 1232.) The *Zurich* court found that a report by the Board's predecessor entity, the Industrial Accident Commission, shortly after the creation of the current workers' compensation system, elaborated on this purpose. (*Zurich,* at pp. 1233–1234.) That report explained, " 'It is better for the state and for the people of the state that what may be termed "average justice" shall be speedily and inexpensively administered than exact justice shall be striven for at a cost that, in many cases, would consume the entire amount involved and leave the applicant indebted for costs and expenses besides. [¶] . . . In short, it is the purpose of the Commission to afford an object lesson as to how to determine issues of minor consequence with reasonable certainty and without delay or burdensome expenditure." (*Ibid.*) From these authorities, *Zurich* concluded the Legislature established former section 5909 to effectuate the purpose of ensuring that workers' compensation cases do not consume too much time or leave claimants in debt. (*Zurich,* at

11

pp. 1234–1235.) *Zurich* also noted that if former section 5909 did not terminate the Board's jurisdiction, aggrieved parties would not know when the 45-day deadline in section 5950 began to run for filing a petition for judicial review. (*Id.* at p. 1235.)

*Zurich* recognized that the Board relied on *Shipley v. Workers' Comp. Appeals Bd.* (1992) 7 Cal.App.4th 1104 (*Shipley*). (*Zurich*, *supra*, 97 Cal.App.5th at p. 1237.) In that case, a petitioner timely filed a petition for reconsideration and was told before the 60-day deadline had passed that the file had been misplaced. (*Shipley*, *supra*, 7 Cal.App.4th at p. 1106.) The petitioner made multiple inquiries over the course of many months and was eventually allowed to reconstruct a duplicate of the file. (*Id.* at pp. 1106–1107.) After the reconstructed file was sent to the Board's rehearing unit and over a year after the petitioner filed the petition for reconsideration, the Board issued an order stating the petition had been denied by operation of law under former section 5909. (*Shipley*, at p. 1107.)

*Shipley* reversed this denial, explaining that while the language of former section 5909 "appears mandatory and jurisdictional, the time periods must be based on a presumption that a claimant's file will be available to the board; any other result deprives a claimant of due process and the right to a review by the board." (*Shipley*, *supra*, 7 Cal.App.4th at p. 1107.) The court emphasized that the petitioner's file was lost "through no fault of his own and due to circumstances entirely beyond his control." (*Ibid.*) The court did not believe the Legislature wrote former section 5909 to cover such gaffes. (*Shipley*, at p. 1107.)

12

*Shipley* noted that the petitioner had made "inquiries and received reassurances from the board that his petition would be considered either after his file was found or after he reconstructed a duplicate file" and concluded that "[a]llowing the board to subsequently deny the petition by operation of law under [former] section 5909 makes no sense." (*Id.* at p. 1108.) The court concluded the petitioner's statutory right to reconsideration by the Board could not "be denied him without due process. Any other result offends not only elementary due process principles but common sensibilities. [The petitioner] is entitled to the board's review of his petition and its decision on its merits." (*Ibid.*)

*Zurich* disagreed with *Shipley* that a petitioner had a due process right to reconsideration by the Board after 60 days, given former section 5909's clear language and the fact that a petitioner could still seek judicial review after the denial of a petition by operation of law. (*Zurich*, *supra*, 97 Cal.App.5th at p. 1237.) *Zurich* concluded that even if *Shipley* could be read more narrowly to allow a form of equitable tolling, it did not support the Board's contention that it could extend the former section 5909 deadline "any time the Board fails to act due to deficiencies in the administrative process." (*Zurich*, at p. 1237.) *Zurich* contrasted the facts before it with the facts of *Shipley*, in that the petitioner in *Zurich* had made no inquiries of the Board and was not lulled or deceived like in *Shipley*. (*Id.* at pp. 1238–1239.) *Zurich* also emphasized that unlike in *Shipley*, the Board had not deprived the petitioner of the opportunity to petition the

Court of Appeal or Supreme Court for judicial review. (*Id.* at p. 1239–1240.)

*Zurich* was not swayed by the Board's argument that judicial review was a statutorily inadequate substitute for reconsideration in that the Board and not the courts can take additional evidence and make credibility findings. (*Zurich*, *supra*, 97 Cal.App.5th at p. 1239, fn. 21.) *Zurich* surmised that the Legislature must have been aware that judicial review was more limited than reconsideration but nonetheless specified that a petition for reconsideration is denied if the Board does not act on it within 60 days. (*Ibid.*) *Zurich* also recognized that its refusal to allow the Board to reconsider the award in that case deprived the petitioner of judicial review, since the deadline to file a petition for review in the courts had lapsed. (*Id.* at p. 1239 & fn. 22.) But *Zurich* said it was objectively unreasonable to miss the readily calculable deadlines. (*Id.* at p. 1239, fn. 22.) *Zurich* also pointed out that former section 5909 protected the interests of parties opposing reconsideration, who had legitimate interests in finality and expeditious proceedings. (*Zurich*, at p. 1240.)

### B. Board's attacks on Zurich

For the reasons *Zurich* set forth at length, we agree with Mayor that former section 5909 was mandatory and the Board exceeded its jurisdiction in purporting to grant Ross Valley's petition after 60 days had passed since Ross Valley filed it. The Board's various attempts to avoid or defeat *Zurich*'s reasoning are unpersuasive.

14

### 1. **Propriety of Writ Relief**

As it did in *Zurich*, the Board preliminarily argues that this is not a proper case for writ relief. Section 5955 allows the Courts of Appeal to issue a writ of mandate in "all proper cases," meaning all cases in which mandamus is available under Code of Civil Procedure section 1085. (§ 5955; *Greener v. Workers' Comp. Appeals Bd.* (1993) 6 Cal.4th 1028, 1046.) "The writ must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." (Code Civ. Proc., § 1086.) But " 'mandamus may not be available to compel the exercise by a court or officer of the discretion possessed by them in a particular manner, or to reach a particular result.' " (*State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.* (2016) 248 Cal.App.4th 349, 370.)

The Board complains that Mayor is seeking to compel it to exercise its *Shipley* tolling in a particular manner. But the Board's grant of Ross Valley's petition did not depend on any exercise of discretion. The Board's position, as stated in its February 2024 order granting reconsideration and decision after reconsideration, is that Ross Valley secured a right to reconsideration merely by timely filing a petition, without needing to satisfy any other factual requirements. As the Board put it, Ross Valley's "conduct is not and should not be at issue." The Board's decision to grant Ross Valley's petition was based on its view of workers' compensation litigants' statutory and constitutional rights, not a discretionary weighing of equitable considerations.

15

The Board further argues that writ relief is premature because its August 2023 order was not an order granting Ross Valley's petition for reconsideration or a final order determining jurisdiction, but rather a non-final grant of reconsideration to allow it to determine its jurisdiction. (See *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 303 [until a tribunal "determines that it has jurisdiction and does some act in consequence, there can be no injury to the party who denies its jurisdiction" and "no interference is permitted until it does decide the matter one way or the other".) The Board's August 2023 order belies this argument, since the title of the order is "Opinion and Order *Granting Petition* for Reconsideration." (Italics added.) The Board's February 2024 order is similarly titled, "Opinion and Order *Granting Petition* for Reconsideration and Decision After Reconsideration." (Italics added.) In that order, the Board not only asserted jurisdiction but proceeded to rule on the merits. Writ relief is not premature.

Finally, the Board contends writ review is unnecessary because Mayor has an adequate remedy in the ordinary course of law in the form of judicial review after the further proceedings called for in the Board's February 2024 decision after reconsideration. But as *Zurich* noted in rejecting the same argument, Mayor's argument is that former section 5909 protected his right to an expeditious end to workers' compensation proceedings. That right would be meaningless if Mayor were forced to wait to enforce it for months or years until the conclusion of further proceedings. (*Zurich*, *supra*,

16

97 Cal.App.5th at p. 1226.) Moreover, the facts and legal arguments surrounding this issue are fully developed. There is nothing to be gained from delaying consideration of this issue until after a WCJ or the Board issues yet another decision. (Cf. *Hikida v. Workers' Comp. Appeals Bd.* (2017) 12 Cal.App.5th 1249, 1255 ["courts have recognized that permitting early appellate review to resolve certain 'threshold issues' may enhance rather than detract from the expeditious resolution of workers' compensation claims"].)

## 2. Distinguishing *Zurich*

The Board next seeks to minimize and distinguish *Zurich*, emphasizing that *Zurich* did not hold that former section 5909 implicated the Board's fundamental jurisdiction. The Board argues that *Zurich* therefore is not inconsistent with *Shipley*'s holding that equitable considerations can excuse a grant of a petition for reconsideration after the former 60-day cutoff.[5] The Board asserts that *Shipley* was the only controlling authority on point that it had to follow.

The Board's description of *Zurich* is inaccurate and incomplete. *Zurich* did decline to categorize violations of former

_____

[5] The Board briefly cites *Rea v. Workers' Comp. Appeals Bd.* (2005) 127 Cal.App.4th 625, 635, fn. 22, which cited *Shipley* for the proposition that "[i]rregularity which deprives reconsideration under the statutory scheme denies due process." However, *Rea* was discussing whether the Board could grant reconsideration on its own motion even if a party had not timely filed a petition for reconsideration. (*Ibid.*) It did not uphold a grant of a petition for reconsideration after 60 days, so we need not discuss it. We also need not discuss unpublished Court of Appeal decisions that the Board cites.

17

section 5909 as depriving the Board of fundamental jurisdiction or merely exceeding the Board's jurisdiction, and it assumed that *Shipley* correctly decided that equitable considerations could avoid the running of the former section 5909 deadline. (*Zurich, supra*, 97 Cal.App.5th at pp. 1236, fn. 17, 1238–1240.) But *Zurich* explicitly "disagree[d] with the conclusion in *Shipley* that a petitioner ha[d] a due process right to review by the Board of a petition for reconsideration even after 60 days has passed." (*Id.* at p. 1237.) *Zurich* therefore rejected the Board's position that *Shipley* allowed it to extend the former section 5909 deadline "any time the Board fail[ed] to act due to deficiencies in the administrative process." (*Zurich,* at p. 1237.) *Zurich* essentially limited *Shipley* to its facts and read it as allowing equitable tolling only when the Board misled a diligent petitioner into missing the deadline for judicial review. (*Id.* at pp. 1238–1239 & fns. 19, 22.) The Board here maintains the same view of *Shipley* and due process that it advanced in *Zurich*, so the two cases represent a split of authority and *Zurich* is not distinguishable. The facts here are also like *Zurich*, not *Shipley*, since there is no suggestion that the Board here misled Ross Valley into disregarding the deadline for judicial review.[6]

---

[6] *Zurich* noted that *Shipley* did not mention equitable tolling or other equitable principles but did mention the unfairness of denying the petitioner's petition. (*Zurich, supra*, 97 Cal.App.5th at p. 1237, fn. 18.) Like *Zurich*, we question whether *Shipley* can be read as a case giving the board *discretion* to toll the former section 5909 deadline, rather than a case *requiring* the board to disregard former section 5909 because of due process. However, like *Zurich* we need not resolve the issue.

18

### 3. Statutory interpretation and practical considerations

The Board offers several reasons why it believes *Zurich* misconstrued former section 5909, its role in the workers' compensation system, and the legislative history and intent behind the relevant statutes. In brief, the Board contends that former section 5909 was directory, the Legislature could not have intended to cut off the Board's ability to consider petitions for reconsideration after 60 days, the Board lacked statutory authority to use former section 5909 to deny petitions for reconsideration, and judicial review is a statutorily inadequate substitute for Board reconsideration. (See *Kabran*, *supra*, 2 Cal.5th at p. 340 [a requirement is directory " '[i]f the failure to comply with a particular procedural step does not invalidate the action ultimately taken' "].) The Board further argues that the practical consequence of treating former section 5909 as mandatory will be a "time-consuming and expensive procedural roundabout" in which a party whose petition for reconsideration is deemed denied under former section 5909 files a petition for review in the courts to have the case remanded to the Board for consideration of the merits of the petition for reconsideration.

We need not address these arguments in detail, for two independent reasons. First, the Board raised many of the same arguments in *Zurich*, and *Zurich* already explained why those

---

Even if *Shipley* can be read as an equitable considerations case, as the Board argues, the facts here are more like *Zurich* than *Shipley*.

arguments have no merit. (*Zurich*, *supra*, 97 Cal.App.5th at pp. 1230–1237.) We agree with *Zurich*'s reasoning. Second, Assembly Bill 171 essentially ratified *Zurich*'s interpretation of the governing statutes, thereby rejecting the Board's statutory interpretation arguments, and created a different rule for the immediate future that should avoid the practical consequences the Board fears.

*Zurich* was decided in December 2023. The Legislature enacted Assembly Bill 171 about six months later, with the Governor approving it on July 2, 2024. (Stats. 2024, ch. 52.) It took effect immediately as a bill providing appropriations and relating to the budget bill. (Stats. 2024, ch. 52, §30; see Cal Const., art. IV, § 12(e)(1).) The temporal proximity indicates the Legislature intended to respond to *Zurich*.

The nature of Assembly Bill 171's response to *Zurich* is also significant. When the California Supreme Court has not yet finally interpreted a statute, the Legislature may amend statutes to try to clarify their existing meaning without making any substantive change. (*McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 473.) Although such attempts to declare the existing meaning of a statute are not binding or conclusive on future courts when construing the statute, the courts will consider such enactments. (*Ibid.*)

Here, however, the Legislature did not try to clarify that former section 5909 was not mandatory or that *Zurich* had misconstrued the intent behind the relevant worker's compensation statutes. Instead, the Legislature simply changed

20

the trigger for the running of the 60-day deadline to have it run from the WCJ's transmission of the case file to the Board. This is a tacit acquiescence to *Zurich*'s interpretation of former section 5909's rule as mandatory, since if the deadline was not mandatory and the Board's practice was permissible there would have been no reason to alter the deadline.

Assembly Bill 171's findings reinforce this interpretation. Assembly Bill 171's findings state that staffing emergencies at the Department of Industrial Relations created challenges for the enforcement of labor laws and the hiring emergency could not "immediately and adequately be addressed through standard civil service recruitment practices." (Stats. 2024, ch. 52, § 1.) The Board complained in *Zurich* and another recent case that it needed additional resources to adequately respond to petitions for reconsideration. (*Zurich, supra*, 97 Cal.App.5th at pp. 1224, 1239, fn. 20; *Earley v. Workers' Comp. Appeals Bd.* (2023) 94 Cal.App.5th 1, 11 (*Earley*).) As Mayor argues, Assembly Bill 171's findings therefore indicate that its amendment to former section 5909 was connected to the Board's complaints about inadequate funding. The Legislature's choice to make its change to section 5909 temporary and have it expire on July 1, 2026, corroborates this view of the amendment as a short-term fix to the Board's need for resources to meet former section 5909's deadline, not a repudiation of *Zurich*'s interpretation of the nature of that deadline.

The committee and floor analyses of Assembly Bill 171's effects on former section 5909 confirm that the Legislature

21

understood it was making substantive modifications to the law to avoid *Zurich*'s effects, not disagreeing with *Zurich*'s analysis. (See Sen. Com. on Budget and Fiscal Review, Rep. on Assem. Bill 171June 22, 2024, p. 1 [bill "modifies procedures by which the appeals board must act on a petition for reconsideration"]; Sen. Floor Analysis of Assem. Bill 171 June 26, 2024, p. 2 [same]; Assem. Floor Analysis of Assem. Bill 171June 26, 2024, p. 1 ["Existing law provides that . . . a petition for reconsideration is automatically considered denied if the WCAB does not to [*sic*] take action within 60 days from the date the petition was filed." The bill "would instead deem a petition for reconsideration to have been denied by the WCAB unless it is acted upon by the appeals board within 60 days from the date a trial judge transmits a case to the appeals board"].)[7]  Additionally, nothing

---

[7] We grant the Board's request for judicial notice of the statutory evolution of the workers' compensation system, including the legislative committee and Legislative Counsel reports on the various bills that amended the relevant statutes. None of these materials demonstrates any flaws in *Zurich*'s conclusion that former section 5909 reflects and effectuates the Legislature's intent that the workers' compensation system achieve substantial justice expeditiously, especially in light of the Legislature's acquiescence in that interpretation.  We deny the Board's request for judicial notice of the remaining materials attached to its request, such as various letters and memoranda urging the Governor to sign or veto those bills, letters to individual legislators, the Governor's press release when signing a bill, or news articles about a bill.  Those documents do not constitute proper legislative history materials because there is no indication they were communicated to the Legislature as a whole. (See *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 37–39.)

22

in the text or history of Assembly Bill 171 suggests the Legislature intended the amended statute to cure lapses of the deadline retroactively, assuming that is even permissible. (See *Elsner v. Uveges* (2004) 34 Cal.4th 915, 936 ["New statutes are presumed to operate only prospectively absent some clear indication that the Legislature intended otherwise"].) *Zurich*'s interpretation of former section 5909 therefore governs this case.

For future cases, the new trigger for the deadline gives the Board the additional time to act on petitions review that it says it needs to resolve normal human errors or administrative irregularities. (*Zurich, supra*, 97 Cal.App.5th at pp. 1224–1225.) The Board's concerns about the implications of *Zurich*'s reasoning and the need for procedural workarounds to resolve complications it creates are therefore groundless, to the extent they ever had any validity. The changes to former section 5909 are currently set to expire in July 2026, but the Legislature's prompt response to the Board's concerns should reassure the Board that the Legislature will continue to monitor the issue and address it again if it persists.

### 4. Due process

The Board also seeks to rebut *Zurich*'s analysis of former section 5909 by noting that as a court it is bound by the state and federal constitutions to provide due process. The Board asserts that parties have a due process right to a ruling by the Board on the merits of a petition for reconsideration. Though it does not say so in so many words, the upshot of this argument is that

23

former section 5909's "deemed to have been denied" provision is unconstitutional as *Zurich* interpreted it.

The Board relies on *Shipley*, *supra*, 7 Cal.App.4th at page 1107, which stated that former section 5909's deadline "must be based on a presumption that a claimant's file will be available to the board; any other result deprives a claimant of due process and the right to a review by the board." The Board insists that it would violate due process for a litigant's petition for reconsideration to be denied without the Board even considering it. As it did in *Zurich*, the Board finally complains that judicial review is not a constitutionally adequate substitute for reconsideration by the Board, since the scope of judicial review is more limited than the complete reconsideration the Board can provide.

It would certainly be preferable for the Board to bring its expertise to bear on every litigant's case, with no exceptions. However, like *Shipley*, the Board fails to reckon with the fact that the workers' compensation system is intended to provide substantial justice quickly and expeditiously, not duplicate the formality of the courts. (*Zurich*, *supra*, 97 Cal.App.5th at pp. 1232–1234; see §§ 5708 [the Board and WCJs "shall not be bound by the common law or statutory rules of evidence and procedure, but may make inquiry in the manner, through oral testimony and records, which is best calculated to ascertain the substantial rights of the parties and carry out justly the spirit and provisions of this division"], 5709 ["No informality in any proceeding or in the manner of taking testimony shall invalidate

any order, decision, award, or rule made and filed as specified in this division"].)  Nor did *Shipley* consider, as *Zurich* did, the interest of the opposing party in avoiding protracted proceedings. (*Zurich*, at p. 1240.)  Given the goal of average or substantial, but expeditious, justice in workers' compensation proceedings, opposing parties need not subordinate their rights to prompt resolution of disputes to accommodate open-ended delays that the Board claims are necessary for it to rule on petitions for reconsideration.  As the Board itself notes, "reconsideration fulfills substantially the same function as the new trial in civil proceedings."  (*United States Pipe & Foundry Co. v. Industrial Acc. Commission* (1962) 201 Cal.App.2d 545, 549.)  Due process does not prevent the Legislature from prioritizing the expeditious resolution of workers' compensation proceedings and opposing parties' interest in finality, with the possibility of limited judicial review, over what amounts to a request for a new trial and more extensive factual reconsideration by the Board.

## 5.  Reliance interests

The Board protests that *Zurich*'s order that the petition for reconsideration be deemed denied by operation of law was "draconian" and "drastic" because the Board had relied on *Shipley* to toll the former section 5909 deadline for over 30 years. The Board similarly urges us to respect the workers' compensation community's reliance on *Shipley* and uphold the Board's practice of indefinitely tolling the former section 5909 deadline to avoid depriving parties of reconsideration by the Board.  But as another court recently remarked about the Board's

25

reconsideration practices, "a long-standing and incorrect procedure remains incorrect." (*Earley*, *supra*, 94 Cal.App.5th at p. 11.)  We cannot ignore former section 5909 and follow *Shipley* here merely because it has been followed in the past.[8]

## DISPOSITION

The petition is granted.  A peremptory writ of mandate shall issue directing the Board to rescind its orders granting Ross Valley's petition for reconsideration and its January 26 and February 2, 2024, opinions and decisions after reconsideration. Because Ross Valley's petition for reconsideration was denied by operation of law under former section 5909 on May 22, 2023, the WCJ's award of permanent disability and attorney's fees issued on March 2, 2023, is now final.

BROWN, P. J.


WE CONCUR:

STREETER, J.
GOLDMAN, J.

*Mayor v. WCAB* (A169465)

---

[8] Because we grant Mayor's writ petition based on former section 5909, we need not address his alternative argument that the board's August 2023 grant of reconsideration violated section 5908.5 and *Earley, supra*, 94 Cal.App.5th at pages 10–12 by granting reconsideration for the purposes of further study without explaining why the case warranted further study and identifying the evidence supporting its decision.

26

Trial court:                                    Workers' Compensation Appeals Board


Counsel for Petitioner:              SHOEMAKER LAW OFFICES

                                                   Elizabeth Hudson

Counsel for and Respondents:     WORKERS' COMPENSATION

                                                   APPEALS BOARD

                                                   Anne Schmitz

                                                   Allison Fairchild